GALE W. FOFT, Appellee, v. D. M. HAMILTON, Appellant.

**FALSE IMPRISONMENT:** Mayors—Nonjudicial Acts—Liability.
1   Freedom from fear of personal actions for damages in arriving at judicial conclusions is the immunity extended to a judicial incumbent. But he must actually act as such. When he lays aside his robes, he becomes a private citizen, and liable as such. So held in an action against a mayor for false imprisonment.

     PRINCIPLE APPLIED: The mayor of a town arrested, or rather, held plaintiff without any information being filed, without any warrant being issued, without any judicial record being made;

refused all bail unless it was cash, though other abundantly good bail was tendered; refused accused a trial, but orally announced a fine without trial; personally took accused to the town jail and locked him up; and on the following day issued a mittimus to the sheriff and personally assisted in its execution. *Held,* said acts were nonjudicial, with consequent liability of the mayor for false imprisonment.

*Appeal from Woodbury District Court.*—HON. GEORGE JEPSON, Judge.

MONDAY, JUNE 21, 1915.

ACTION for damages for false imprisonment. There was a verdict- and judgment for the plaintiff and the defendant appeals.—*Affirmed.*

*Henderson & Fribourg,* for appellant.

*Shull, Gill, Sammis & Stilwell,* and *Pitkin & Mullen,* for appellee.

EVANS, J.—At the time of the wrongful acts complained of, the defendant was the mayor of the town of Moville. The plaintiff was a resident of the town of Kingsley, ten or twelve miles distant. On the night of August 19, 1913, the defendant personally arrested the plaintiff and placed him in the village jail and kept him there until the following day. No information was filed before him. No warrant was issued by him. No trial was had. The plaintiff demanding a trial, this was expressly refused. In lieu of bail, the defendant demanded a deposit of $50 cash, which should be conditioned upon the appearance of the plaintiff upon the following morning, and his payment of an alleged fine of $10. At the close of the evidence, the defendant moved for a directed verdict on the ground that in doing the acts complained of, he was acting in a judicial capacity as mayor of the town. The ground of this motion was also presented in support of a motion for a new trial. It is the only question which is presented for our consideration on this appeal. That is to say,

upon the whole record, was the defendant entitled to a directed verdict?

The evidence is not greatly in conflict in its most significant features. In so far as there is conflict, the appellee is entitled to have the evidence considered in the light most favorable to him, and our following statement of the evidence will obey this requirement.

On August 19, 1913, at about 7:30 P. M., the plaintiff, a young man twenty-four years of age, drove into the town of Moville in an automobile. He stopped the automobile upon the street and left it standing thereon. Thirty or forty minutes later, he was arrested by the town marshal and brought to the mayor's office. This was done pursuant to a preceding telephone conversation between mayor and marshal. He was orally informed that he was arrested for driving without lights after sundown. The time of sunset was 7:21. He protested his innocence on the ground that he had driven into town before lights were due. He demanded a trial. Thereupon, it was arranged that he might deposit with the mayor $50 in cash in lieu of bail for his later appearance, and this was done. Thereupon, the defendant purported to arrest or hold the plaintiff upon another charge. What transpired at this point was related by the plaintiff as a witness as follows:

". . . And he said, 'Now, since you got smart and didn't pay your first fine I have another charge against you.' I asked him what for, and he told me leaving the car stand without lights. I said you don't think you can get me on both charges, and he said, 'Yes,' and I said, 'I don't think you can.' I said, 'I am not guilty and will stand trial.' He said, 'You don't get a trial,' and Lee said to him, 'You have got to give him a trial if he can put up a bond,' and he said, 'No, I don't; he can pay his fine or go to jail.' Finally Mr. Kurtz said, 'Let him put up a $50.00 bond if he wants to, I don't believe he can get it,' and Mr. Hamilton said, 'If he

will put up a $50.00 bond, I will accept it.' I asked him if he would accept a check and he said 'no,' and I asked him if he couldn't telephone to some of the banks or friends, or someone he knew to find out if my check wasn't good, and he said 'no,' I would have to get my own bond, so I went down to Haskell's Drug Store. Mr. Jasper and Mr. Kurtz were along, and I asked Mr. Haskell if he could cash another check for $50.00, and he said he could not; he wanted to know what the trouble was, and I told him, and he said he would go up and go on my bond, and on the way up we met Jim Jackson, a deputy sheriff, so he said he would go up and go on my bond, so they both went up, and I said to Mr. Hamilton, 'These men offer to go on my bond, and if they are good you can make out a bond and they will sign it.' He said, 'They are abundantly good, all right, but I won't accept anything but a cash bond; if they want to put up their checks or cash, I will take that.' I said, 'Didn't you say they were good?' and he said, 'Yes,' and I said 'Make out a bond then, and I am going home,' and he said, 'You are going to jail,' and he got his hat and told me to come with him, and he took me to jail. We started for the jail and got as far as the car and I said, 'Mr. Hamilton, I don't want to go to jail. I have got a car here that cost me $2,000, and I will let you have that until morning.' He said, 'No, I will show you how to get smart with me,' and he took me on to jail, and when we got down there, I said, 'Mr. Hamilton, I don't want to go into a fire trap like this. I have got a watch and chain and ring that cost $350, and I will let you hold them and the car until morning,' and he said, 'I will accept nothing,' and he said, 'I will show you Fofts how to get smart with me.' . . . Mr. Hamilton took me down and locked me in the cell.''

Immediately after the plaintiff was locked up by the defendant, his friends made strenuous efforts to satisfy the requirements of the defendant so as to release the plaintiff from the jail. The plaintiff's father and brother and an

attorney came down from Kingsley, arriving at about 11:00 P. M., and at once sought to satisfy the defendant upon the subject of bail. The father brought with him the sum of $1,000 and offered to deposit the same. The offer was refused. Immediate trial was asked. This was refused. On the following morning, the plaintiff was brought to the mayor's office, where he again demanded a trial. This was refused by the defendant on the alleged ground that he knew the defendant to be guilty; and that the defendant had admitted his guilt and had pleaded guilty; and had had all the trial he ever would have. He gave him the alternative of paying an alleged $10 fine or going back to jail. The payment of a fine being refused by defendant, he was again locked up. Later in the day, the defendant issued a mittimus directed to the sheriff of Woodbury county, and directing the confinement of the plaintiff in the county jail at Sioux City for five days. On the same day, he participated in the execution of the mittimus by accompanying the plaintiff to Sioux City and participating in the delivery of the plaintiff into the custody of the sheriff. At Sioux City, on the suggestion of the sheriff, he reduced the time of confinement to three days.

The foregoing is only a small part of the evidence, but it is sufficiently illustrative of the whole. The argument in behalf of the appellant is that, inasmuch as the offense for which the plaintiff was arrested was within the scope of the defendant's jurisdiction as mayor, therefore he was acting in a judicial capacity and is not amenable to an action for damages for any error of judgment, and that likewise he is not amenable for such action, even though he acted maliciously or corruptly. A very careful brief is presented to us wherein all our cases are considered and reviewed on the question of whether the judge of an inferior court may be held amenable under any circumstances to an action for damages. The doubtful point of the discussion is whether the

1. FALSE IMPRISONMENT: mayors: non-judicial acts: liability.

door is opened to such an action by a showing of malice and corruption.

It is the policy of the law that the judicial incumbent shall be free from fear in arriving at judicial conclusions. To this end, he is ordinarily immune from attack by personal action for damages. This is the broad proposition for which the appellant contends. We think that upon this record, the case cannot be made to turn upon this question. The trial court submitted the case upon a theory which did not involve such question. No complaint is made upon this appeal of the instructions of the court, or of any of its rulings, except as it is claimed that the motion for a directed verdict ought to have been sustained. The particular conduct of which complaint is made was not judicial and was not within the scope of any judicial duty on the part of the mayor. The wrongful conduct was not that he reached erroneous conclusions or that he entered an erroneous judgment or order. Granting that, as an individual, he might lawfully, under the statute, arrest the plaintiff for a crime committed in his presence, he would thereby assume the duty of following certain statutory procedure. It was no part of the judicial duty of the mayor as such to arrest the plaintiff or to hold him in custody or to put him in jail. In the doing of these things, he occupied no different position than a private individual would have occupied. So far as the second alleged offense was concerned, the plaintiff was never brought before him by anyone. There was no complaint, oral or written. When the defendant personally locked up the plaintiff in the jail, no information had been laid before him nor laid by him before any other magistrate, nor had any warrant ever been issued by him or by any other magistrate, nor had any judicial record been made, nor had any evidence been heard or pretended trial had. Nothing appears to have been done whereby the jurisdiction of the mayor over the person of the plaintiff could arise. We think it clear, therefore, that the act of the defendant in locking the plaintiff in the jail in the

manner stated was not a judicial act in a legal sense and that the imprisonment thereby effected was false and wrongful within the meaning of the law. The conduct of the defendant was not only illegal and ignorant but it was persistently and extremely arbitrary and oppressive and merits severe rebuke. We think that the motion for a directed verdict was properly overruled. No other question is presented for our consideration. The judgment below is therefore—*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.